UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GAIL L. GRIESER**,                                        Case Number 3:11 CV 587

             Plaintiff,                        Magistrate Judge James R. Knepp, II

     v.                                        MEMORANDUM OPINION AND ORDER

**CHARLES M. MONTGOMERY, et al.**,

             Defendants.

### INTRODUCTION

This is a wrongful death suit stemming from an automobile accident in Henry County, Ohio. The district court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Federal Civil Rule 73. (Doc. 9, 47).

Pending before the Court is a Motion to Dismiss filed by Defendants Gelco Corporation and UPS Supply Chain Solutions, Inc. (Doc. 38). Plaintiff filed an Opposition to the Motion. (Doc. 45). Defendant Montgomery then filed a Memorandum to Support Application of Michigan Law. (Doc. 48). Plaintiff filed an Opposition and/or Motion to Strike Defendant Montgomery's Memorandum to Support Application of Michigan Law (Doc. 49), to which Moving Defendants and Defendant Montgomery each filed a Reply (Doc. 50, 52). For the reasons discussed below, the Court grants the Motion to Dismiss (Doc. 38), grants Plaintiff leave to file another amended complaint, and denies the Motion to Strike (Doc. 49).

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the

Court is to test the legal sufficiency of the complaint. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). This standard for Rule 12(b)(6) applies to "all civil actions." *Id.* at n.4 (internal quotation omitted).

## ANALYSIS

### Choice of Law

As an initial matter, the Court – while assuming the facts in the Amended Complaint to be true – must determine which state's tort law applies before the sufficiency of the factual matter pleaded can be determined. There is some dispute over which substantive law to apply in this case. Plaintiff seeks to hold Defendants liable under a Michigan statute, Mich. Comp. Laws § 257.401,

2

while maintaining that Ohio substantive law applies otherwise; Defendant Montgomery argues Michigan law applies, and requests the right to be heard on the issue given that Michigan's no-fault liability system would impact the claims against him; and Moving Defendants argue Ohio law applies to the exclusion of any Michigan statute.

A federal court sitting in diversity must apply the choice of law principles of the forum state, meaning the Court in this case must apply Ohio choice of law principles. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."); *see also Heine v. Streamline Foods, Inc.*, 805 F. Supp. 2d 383, 389 (N.D. Ohio 2011). And for torts, the Ohio Supreme Court has adopted the choice of law approach of the Restatement. *Morgan v. Biro Mfg. Co. Inc.*, 15 Ohio St. 3d 339, 341–342 (1984) ("We hereby adopt the theory stated in the Restatement of the Law of Conflicts, as it is more reflective of our past decisions and also provides sufficient guidelines for future litigation.").

Under the Restatement approach, "analysis must begin" with the presumption "that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Id.* at 342. To determine the state with the most significant relationship, the Court must consider five factors: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any

3

factors from Section Six of the Restatement[1] the Court deems relevant. *Id.*

Here, the Amended Complaint alleges a vehicular collision occurred in Henry County, Ohio, causing the death of Kenneth A. Grieser. (Doc. 28, at 2–3). As a result, there is a presumption that Ohio's tort law controls unless another jurisdiction has a more significant relationship to the instant lawsuit. After analyzing the various Restatement factors, the Court concludes this presumption cannot be overcome.

The first two factors unambiguously point to Ohio law controlling. The place of the alleged injury was Ohio. (Doc. 28, at 2). The place where the conduct causing the alleged injury occurred was Ohio. That is, the Amended Complaint alleges the collision "was due directly and proximately to the negligent operation of a vehicle driven by the Defendant", which allegedly occurred in Henry County, Ohio. (Doc. 28, at 3). The third factor points in no single direction. The Amended Complaint alleges Plaintiff is a citizen of Indiana, Defendant Montgomery is a citizen of Michigan, Defendant Gelco Corporation is a resident of Minnesota, and Defendant UPS Supply Chain Solutions, Inc. is a resident of Georgia. (Doc. 28, at 2). As Moving Defendants correctly argue, though, the fourth factor must support the conclusion that Ohio law controls: Ohio is apparently the only place where the paths of all four parties crossed. No allegations in the Amended Complaint suggest any relationship between the parties in Michigan or any state other than Ohio. Additionally, the Amended Complaint does not show any relevant Section Six factor rebuts the presumption. Therefore, based on the facts pleaded in the Amended Complaint, Ohio substantive law applies to

---

1. These factors include the needs of the interstate and international system; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability, and uniformity of result; and the ease in the determination and application of law to be applied. *Morgan*, 15 Ohio St. 3d at 342, n.6.

4

this case.

Even though Ohio tort law applies, Plaintiff argues Mich. Comp. Laws. § 257.401 is still applicable because both drivers involved in the accident were licensed in Michigan and both cars involved in the accident were registered in Michigan. This statute creates owner and lessor liability for injuries caused by a lessee's operation of a vehicle. Mich. Comp. Laws § 257.401(1)–(3). Plaintiff argues there is no geographical limitation put on the application of this statute, saying "the statute's mandates are uniformly applied to an owner of a vehicle" if the vehicle is garaged and registered in Michigan. (Doc. 49, at 4). Moving Defendants move to dismiss this claim on the grounds that it does not apply, but that even if it did, federal law preempts the Michigan statute.

Notwithstanding the fact Plaintiff does not allege the facts she relies on to argue for extraterritorial application of the Michigan statute,[2] the Court sees no basis for applying the Michigan liability statute when a choice of law analysis clearly shows Ohio substantive law applies and where, as here, both parties are not Michigan residents. Indeed, even the Michigan Supreme Court's own opinion on the applicability of the statute suggests it should not be applied here.

The approach taken in *Bertram v. Norden*, 159 Ohio App. 3d 171 (Ohio Ct. App. 2004), is helpful. In that case, a snowmobiling accident occurred in Michigan, and Michigan was also the place where the conduct causing the injury occurred. *Id.* at 176–177. The Third District Court of Appeals undertook a choice of law analysis under *Morgan* and determined Michigan law controlled, in part because Michigan had enacted a statute specifically for snowmobiling (whereas Ohio had not) and the parties specifically went to Michigan to snowmobile, thereby availing themselves of the laws of Michigan. *Id.* at 178. For that reason, the court applied a Michigan assumption of risk

---

2. Specifically, the Amended Complaint does not allege any information about the vehicle, or driver thereof, that collided with the vehicle driven by Defendant Montgomery.

5

statute to bar the plaintiff's claims. *Id.* at 178–179. But the court would not have applied the Michigan statute had its choice of law analysis resulted in Ohio law controlling. *See id.* at 175–176 (noting before conducting a choice of law analysis that the plaintiff's claims were precluded under Michigan law but not under Ohio law).

Plaintiff relies in significant measure on *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406 (1982) for the proposition that the ownership liability statute should apply in this case. There, the Michigan Supreme Court opined that the purpose of the statute "cannot be fully effectuated" unless given uniform application to Michigan residents traveling to other states. *Id.* at 437. But the facts in the *Sexton* case were plainly different than here, as the court explained.

To begin its analysis of whether § 257.401 applies extraterritorially, the court provided a background on extraterritorial application of state law:

> The general rule of law is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. This extraterritoriality rule has a long history in international and common law. However, as populations and technology progressed and travel between countries and among the states increased to an everyday occurrence, exceptions to the general rule of extraterritoriality were created so that it is now recognized that a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries.

*Id.* at 434 (citations and quotation marks omitted). Then, the court described what it takes for a statute to be an exception to this general rule:

> In order for a statute to have extraterritorial application, there must be clear legislative intent. Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. *To the contrary, the presumption is that the statute is intended to have no extraterritorial effect*, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication.

*Id.* at 434–435 (quotation marks omitted) (emphasis added).

6

Turning to § 257.401, the court noted that in enacting it, the legislature was "not regulating the tortious conduct of the operators of the vehicles, but rather the relationship between the owner and  the operator." *Id.* at 436. The cause of action under the statute is not founded on the conduct of a vehicle's operators, but rather "on the relationship between Michigan owners and Michigan operators" that sets the wheels in motion for the negligent operation to occur. The court then examined the two consolidated cases before it and noted that in each case, "the owner-operator relationship took place exclusively in Michigan." *Id.* Based on these facts, the court was "not convinced" that applying § 257.401 to the two cases before it resulted in an extraterritorial application of Michigan law. *Id.* So long as the entrustment occurs in Michigan between Michigan residents, the court concluded, application of § 257.401 "involves an intraterritorial impact rather than an extraterritorial impact." *Id.* at 438–439.

Importantly, the court in *Sexton* never analyzed the issue of whether § 257.401 *could* be applied extraterritorially. But the emphasis in the majority opinion's closing remarks is telling:

> We further hold that [§ 257.401 is] not given extraterritorial application where the *owner* and operator relationship arises in Michigan. Yet even were we to hold otherwise, legislative intent and public policy require that the owners' liability statutes be given uniform application to all Michigan motor vehicle and aircraft owners.

*Id.* at 439–440. The court's own emphasis of the word "owner" is the key to its ruling in *Sexton*. Because the owners and operators in that case were Michigan residents, and their contractual relationship arose in Michigan, the court did not need to analyze whether § 257.401 should actually be given extraterritorial effect.

In the instant case, the Amended Complaint fails to allege that the owner of the vehicle driven by Defendant Montgomery was a resident of Michigan. To the contrary, both Moving Defendants are allegedly residents of states other than Michigan. (Doc. 28, at 2). If for no other

reason than this, the actual holding of *Sexton* – that § 257.401 can be applied to accidents outside of Michigan when the owner-operator relationship arose in Michigan between a Michigan owner and a Michigan operator – is inapplicable on the facts pleaded in the Amended Complaint. *See General Motors Corp. v. Nat'l Auto Radiator Mfg. Co., Ltd.*, 694 F.2d 1050, 1054 (6th Cir. 1982) (finding Michigan law did not apply under *Sexton* because one party to the relationship at issue was not incorporated in Michigan).

Because the Court concludes on the facts pleaded in the Amended Complaint that Ohio – not Michigan – law applies to this case, and Mich. Comp. Laws § 257.401 is not applicable, the Court will not address Moving Defendants' argument that Mich. Comp. Laws § 257.401 is preempted by federal law. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010) ("federal preemption of state law is a constitutional question because it is premised on the Supremacy Clause of the United States Constitution"). Plaintiff has failed to state a claim upon which relief can be granted with respect to her claim under Mich. Comp. Laws § 257.401. Accordingly, this claim against Moving Defendants is dismissed.

Negligent Entrustment, Training, Education, and Oversight

Plaintiff alleges various theories of direct negligence by Moving Defendants, to wit: negligent entrustment and negligent training, education, or oversight. (Doc. 28, at 3). In *Gulla v. Straus*, 154 Ohio St. 193 (1950), the Ohio Supreme Court defined the elements of a negligent entrustment claim:

The owner of a motor vehicle may be held liable for an injury to a third person upon

8

the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent driver whose negligent operation results in the injury.

*Id.* at 193. Negligent entrustment liability in Ohio "is generally confined to cases where [the owner] entrusts his motor vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with due care." *Id.* at 199. In cases where the incompetence of the entrustee is not apparent to the entruster, "it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency." *Id.*

As for Plaintiff's other direct negligence claim against Moving Defendants, a claim of negligent hiring, supervision, or retention against an employer is not viable under Ohio law without an underlying act of negligence by an employee that causes an injury or loss. *Lehrner v. Safeco Ins. Co.*, 171 Ohio App. 3d 570, 583 (Ohio Ct. App. 2007). The elements for such a claim are "(1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's knowledge of the employee's incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5) a causal link between the employer's negligence in hiring, supervising, and retaining and the plaintiff's injuries." *Id.*; *Hicks v. Hodge*, 2008 WL 4425938, at *8 (S.D. Ohio 2008); *Cook v. Montgomery Ct., Ohio*, 158 Ohio App.3d 139, 145 (Ohio Ct. App. 2004); *see also Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (1988) (equating negligent training with negligent supervision).

Here, with respect to these direct negligence claims against Moving Defendants, the Amended Complaint alleges:

9

4.   Further pleading, that the Defendants, GELCO CORPORATION and UPS SUPPLY CHAIN SOLUTIONS, INC., negligently entrusted their vehicle to the Defendant, CHARLES M. MONTGOMERY and/or otherwise were negligent in their training, education and/or oversight of Defendant CHARLES M. MONTGOMERY.

5. That at the time of the aforesaid vehicular collision, the Defendant, CHARLES M. MONTGOMERY, was operating said vehicle of the Defendants, GELCO CORPORATION AND UPS SUPPLY CHAIN SOLUTIONS, INC., as an agent, servant and/or employee of the Defendants, GELCO CORPORATION and UPS SUPPLY CHAIN SOLUTIONS, INC.

(Doc. 28, at 3). These are bare legal conclusions, clearly insufficient under *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Without more factual matter alleged, these claims are not facially plausible. *See Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In fact, Plaintiff does not even allege all the elements of these causes of action, let alone factual matter supporting a reasonable inference about each element, and this alone is fatal. *See Firestone v. CitiMortgage, Inc.*, 2010 WL 2639906, at *2 (N.D. Ohio 2010) ("the complaint must allege 'either direct or inferential' allegations regarding all of the material elements necessary to sustain recovery under 'some' viable legal theory"). As for Plaintiff's negligent entrustment claim, Plaintiff does not allege any factual matter supporting a reasonable inference that Moving Defendants had actual or implied knowledge of Defendant Montgomery's incompetence or

10

inexperience as a driver.[3] *See Gulla*, 154 Ohio St. at 193–199. This omission makes Plaintiff's negligent training, education, or supervision claim equally insufficient. *See Lehrner*, 171 Ohio App. 3d at 583.

In Plaintiff's Opposition to the Motion to Dismiss, she argues the Amended Complaint sets forth plausible claims and satisfies the "notice pleading" standards. (Doc. 45, at 2). However, as Moving Defendants correctly point out in reply, the fair notice pleading standard discussed in the case Plaintiff cites, *Aaron v. Bob Evans Restaurant*, 477 F. Supp. 2d 853 (N.D. Ohio 2007), has been effectively retired by *Twombly* and *Iqbal*. *See Boroff v. Alza Corp.*, 685 F.Supp. 2d 704, 707 (N.D. Ohio 2010) ("the fact that the complaint provides the defendant with 'fair notice' of the nature of the claim may not be sufficient to survive dismissal) (noting that *Iqbal* applied the heightened *Twombly* standard to "all civil actions"). In the aftermath of *Iqbal*, mere recitals of legal conclusions couched as factual allegations "do not suffice." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff has failed to state a claim of direct negligence against Moving Defendants upon which relief can be granted. Accordingly, these claims are dismissed. If Plaintiff is to proceed on direct negligence theories against Moving Defendants, she must file an amended complaint alleging factual matter that allows the Court to draw a reasonable inference that each material element of the legal theories the claims rest on is plausible.

---

3. It is also questionable whether Plaintiff alleges Defendant Montgomery's underlying incompetence or inexperience. Plaintiff does allege Defendant Montgomery was driving while intoxicated (Doc. 28, at 5), but does not allege any incident of incompetence or driving while intoxicated prior to the accident at issue that could have imputed knowledge of his driving incompetence onto Moving Defendants.

Vicarious Liability

Under Ohio law, "there can be no vicarious liability for an employee's torts if the negligent act occurs when the employee, although using his employer's vehicle, is off duty or is on a personal excursion for his own purposes." *Kinsey v. Kinsey*, 98 F. Supp.2d 834, 836 (N.D. Ohio 2000) (citing *Mider v. United States*, 322 F.2d 193, 197 (6th Cir. 1963)). The proper test for the principal's liability under Ohio law "is not whether a given act was performed during the existence of the agent's employment, but whether such act was done by the agent while engaged in the service of, and while acting for[,] the principal, in the prosecution of the latter's business." *Id.* (citing *Senn v. Lackner*, 157 Ohio St. 206, 210–211 (1952)).

Here, the Amended Complaint does not allege that Defendant Montgomery was acting within the scope of his employment at the time of the accident. Instead, it merely alleges "at the time of the aforesaid vehicular collision, the Defendant, CHARLES M. MONTGOMERY, was operating said vehicle of the Defendants, GELCO CORPORATION and UPS SUPPLY CHAIN SOLUTIONS, INC., as an agent, servant and/or employee of the Defendants, GELCO CORPORATION and UPS SUPPLY CHAIN SOLUTIONS, INC." (Doc. 28, at 3). While this alleges Defendant Montgomery was negligent during the existence of his employment, it does not allege factual matter suggesting the negligent act was done "while engaged in the service of, and while acting for" Moving Defendants – a key element of the claim. Plaintiff admits as much in her Opposition. (Doc. 45, at 2). Thus, the Amended Complaint fails to state a claim for vicarious liability under Ohio law. *See Firestone*, 2010 WL 2639906, at *2.

Plaintiff states that during the course of discovery she might find evidence to support a vicarious liability claim. (Doc. 45, at 2–3). But this argument does not defeat a 12(b)(6) motion. *See Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*, 2006 WL 2996449, at *2 (S.D.N.Y.

12

2006) ("Plaintiff's mere, unsubstantiated hope that discovery may yield evidence [in support of its claim] is insufficient to withstand a motion to dismiss."); *see also Krygoski Const. Co. v. Flanders Industries, Inc.*, 2009 WL 722611, at *5 (W.D. Mich. 2009) ("Plaintiff's speculation that during the course of discovery it might find evidence to bring its claim within the limitations period is insufficient to defeat Defendant's motion to dismiss."). Moreover, because Plaintiff has admitted to not stating a claim for vicarious liability, she has effectively not opposed Moving Defendants' Motion with respect to this claim even though she argues it is not necessary to dismiss a claim that has not been presented. (Doc. 45, at 2). *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"). For all these reasons, to the extent the Amended Complaint attempts to allege a claim that Moving Defendants are vicariously liable, it is dismissed.

### CONCLUSION

For the above reasons, the Motion to Dismiss (Doc. 38) is granted. Because the Amended Complaint fails to state any claim against Moving Defendants upon which relief can be granted, the First Amended Complaint (Doc. 28) is dismissed with respect to Moving Defendants. Plaintiff is granted leave to file an amended complaint within fourteen days of this order. Plaintiff's Motion to Strike Defendant Montgomery's Memorandum to Support Application of Michigan Law (Doc. 49) is denied.

IT IS SO ORDERED.

                     s/James R. Knepp, II
                     United States Magistrate Judge